Amos E. **PEYTON**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–613.

United States Court of Veterans Appeals.

Submitted Jan. 4, 1991.

Decided May 30, 1991.

Joseph A. Violante, was on the brief, Washington, D.C., for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and John McNamee–Alemany, Washington, D.C., were on the brief, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

This case comes to us on an appeal from a March 15, 1990, Board of Veterans' Appeals (BVA or Board) decision reducing the appellant veteran's disability compensation rating from 70 to 50 percent for his service-connected psychiatric disability. We vacate the Board's decision and remand for readjudication with specific findings and conclusions regarding all applicable issues and regulations as well as a statement of reasons or bases pursuant to 38 U.S.C. § 4004(d)(1) (1988) and our decision in *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990).

## I. BACKGROUND

At the outset, we note that the Court is hampered both in reviewing this case and in preparing this opinion by the inadequacy of the record on appeal. Despite a January 16, 1991, order of this Court that the Secretary supplement the record on appeal with copies of all rating decisions in appellant's case prior to November 9, 1988, the record and supplemental record do not contain the 1983 rating decision which apparently awarded appellant a 100–percent rating, nor a November 4, 1985, rating decision, which is referred to in a September 5, 1986, rating decision as being "incorporated herein by reference." Supp.R. at 3. In addition, the record contains no medical history for the appellant prior to 1983; specifically lacking is his entire 12–year service medical record and reports of his 1978 discharge examination and 1978 or 1979 medical examinations by the Veterans' Administration (now the Department of Veterans Affairs) (VA), shortly after his discharge from service. Despite the inadequacy of the record, we are able to decide the case on the grounds of an insufficient BVA decision.

The veteran apparently served in the Air Force (R. at 17, 18; the record does not indicate definitively which branch of the Armed Forces) from June 13, 1966, to July 7, 1978. R. at 82. In a June 19, 1979, rating board decision by a Regional Office (RO) he was awarded a 30–percent service-connected disability rating for "anxiety neurosis, chronic, with depression, competent". Supp.R. at 1. A June 3, 1981, RO rating board decision increased his rating to 50 percent, effective February 24, 1981, for "Anxiety Neurosis with depression". Supp.R. at 2. According to a September 5, 1986, RO rating board decision, the veteran's rating was increased to 100 percent, effective May 9, 1983. Supp.R. at 4.

The record includes a May 1983 report of a compensation and pension examination of the veteran by a VA staff psychiatrist. The examining psychiatrist noted that the veteran's "description of his highs and lows" (with the lows being associated with almost a complete loss of energy) was "quite credible" and that he detected "no evidence to suggest that the veteran in any way was exaggerating" his symptoms. R. at 18. Complaints of "visual hallucinations" were found to be "quite genuine and to be consistent with manic delirium." *Ibid.* The examiner also noted that schizophrenic trends were lacking during the interview, as were "signs of depression", and that "anxiety" was within normal limits. *Ibid.* He concluded that he had "no reason whatsoever to believe that the information provided by the veteran ... in [the] interview is anything other than highly reliable." R. at 19. The psychiatrist made a diagnosis of "Bipolar Disorder, Mixed, Rapidly Cycling and Severe." *Ibid.* He found the veteran to be "considerably to be [sic] severely impaired in regard to social adaptability and ... profoundly or completely impaired in regard to industrial adaptability as a direct consequence of the psychiatric condition diagnosed above." *Ibid.* He further noted that although various examiners had made various diagnoses at various times in the past with regard to the veteran's psychiatric condition, "[a]t the time of this examination, this examiner is in agreement with those examiners who

have judged the veteran's psychiatric condition to be Bipolar Disorder." *Ibid.* After reviewing the May 1983 results of a Minnesota Multiphasic Personality Inventory, the examiner recommended that the veteran be hospitalized for treatment and suggested "suicidal precautions." *Ibid.*

Apparently on the basis of this examination, the veteran was assigned a 100–percent rating, effective May 9, 1983, for "anxiety neurosis with depression" by an RO rating board. Supp.R. at 4. Although not in the record on appeal, there was apparently also an RO rating board decision of November 4, 1985; to what effect is not stated. *See* Supp.R. at 3. A September 5, 1986, RO rating board decision reduced the appellant's rating for anxiety neurosis to 70 percent, effective December 1, 1986. The decision noted that medical examination had found that the veteran had "continued to improve" and found no indication of any anxiety; the examiner expressed doubt that the veteran "experienced hallucinations" and made a diagnosis of "histrionic personality disorder". Supp.R. at 3–4.

The record also shows that the veteran was prescribed Lithium on a regular basis from 1983 apparently until the present and was seen on a regular basis at VA outpatient clinics from 1983 through at least June 23, 1988. R. at 14–45. The veteran was hospitalized from April 12 to 22, 1987, at a VA hospital, at which time a diagnosis of "depression, bipolar" was noted by the examining physician. R. at 40. The examiner also noted under "PAST HISTORY" that the veteran "[h]as been treated for manic depressive psychosis since 1973". *Ibid.*

In a rating examination conducted on September 27, 1988, a VA psychologist reported that the veteran's reports of auditory and visual hallucinations were "not credible" and that "the veteran's behavior during this examination was markedly at odds with the symptoms he reported, something that has been consistently noted in previous examinations of this veteran." R. at 2. The psychologist assigned the diagnosis of "mixed personality disorder, with features of histrionic and passive-aggressive personality disorders" and noted that no "evidence was obtained whatsoever during this examination that would in any way substantiate the presence of an anxiety neurosis . . . [or] a diagnosis of depressive disorder of any type." R. at 3. On the basis of this examination, an RO rating board on November 2, 1988, reduced the appellant's rating for "Anxiety neurosis with depression" from 70 to 50 percent, finding that the veteran did not present any evidence to demonstrate objectively anxiety or depression. R. at 5.

On January 26, 1989, the veteran and his sister, with whom he resided, presented sworn testimony at a personal hearing at an RO in connection with his BVA appeal of the November RO rating decision. R. at 46–57. The veteran testified that when he is "down" he is tired and that when he is up he's afraid because his thoughts go round his head in a circle. R. at 46. His sister testified that when the veteran is down he "stays in bed constantly all the time 24 hours a day", for three days to a week. R. at 51.

Following the hearing and at the request of the RO, the veteran was admitted to a VA hospital from February 27 to March 15, 1989, for observation and evaluation. R. at 65–66. He was examined by a VA physician, and his evaluation was signed by a VA psychiatrist. According to the report of this examination, the veteran had been diagnosed while in service as having "Depressive neurosis, resolved" and "Passive dependent personality disorder." R. at 67. No firm diagnosis appears to have been reported as a result of the 1989 hospitalization (although the very beginning of the report states "PRIMARY DIAGNOSIS: . . . Mixed personality disorder, histrionic dependent and narcissistic features" (R. at 66), this may be only a note of a prior diagnosis). However, the report stated: "Psychological testing was performed, revealing a diagnostic impression of: 1. Mixed personality disorder with dependent histrionic and narcissistic features. 2. Chronic depression, moderate-to-severe, probably secondary to number one." R. at 68. "He was judged to be nonpsychotic at the time of discharge". *Ibid.*

On April 28, 1989, the RO hearing officer "found no evidence of anxiety neurosis.

Depressive features recorded are felt to be related to mixed personality disorder with dependent histrionic narcissistic features." R. at 70. The 50–percent rating was continued.

The BVA issued its decision on March 15, 1990. Its entire "DISCUSSION AND EVALUATION" section is contained in the following four sentences:

> The September 1988 VA psychiatric examination revealed no evidence of anxiety neurosis or depressive disorder, and the diagnosis was mixed personality disorder with features of histrionic and passive-aggressive personality disorders. Although psychological testing during the period of observation and evaluation from February to March 1989 did result in a diagnostic impression of moderate-to-severe depression, it was considered secondary to a mixed personality disorder. Moreover, the veteran did not exhibit any blackout spells or any obvious behavioral or mood changes during the hospitalization. We have considered the doctrine of reasonable doubt but find that the disability picture due to anxiety neurosis with depression does not more nearly approximate the criteria required for a higher evaluation.

*Amos E. Peyton,* loc. no. 010075, at 5 (BVA Mar. 15, 1990). As its formal "FINDING OF FACT", the BVA stated:

> The veteran's psychiatric symptomatology is primarily due to a nonservice-connected mixed personality disorder. His service-connected anxiety neurosis with depression is manifested by complaints of sleep difficulty, anger, feelings of fatigue, and somatic symptoms; anxiety and depression have not been objectively demonstrated on recent evaluation. The disability creates no more than considerable social and industrial impairment.

*Ibid.* The "CONCLUSION OF LAW" was:

> The schedular criteria for a rating in excess of 50 percent for anxiety neurosis with depression are not met.

*Ibid.*

## II. ANALYSIS

### A.

In order to enable a VA claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 4004(d)(1) (1988) to include in its decisions "a written statement of [its] findings and conclusions *and the reasons or bases for those findings and conclusions....*" *Gilbert,* at 56 (emphasis in original); *see also Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991) (quoting *Gilbert*). In its statement of findings, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert,* at 56; *Hatlestad,* at 169 (quoting *Gilbert*).

As to its statement of "reasons or bases", the Board must include "the precise basis for [its] decision [and] the Board's response to the various arguments advanced by the claimant". *Hatlestad,* at 169 (quoting *Gilbert*). In *Gilbert* and *Hatlestad,* we remanded the matter in part because the BVA decisions contained "neither an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim nor a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert,* at 58; *Hatlestad,* at 169 (quoting *Gilbert*). The same deficiencies are present in the instant case.

We further said in *Gilbert:* "If the veteran is to be able to understand the reason for the denial of his claim, and if our review is to be an informed one, strict adherence by the Board to the requirements of 38 U.S.C. § 4004(d)(1) is required." *Gilbert,* at 58. Such strict adherence was not present here.

The Court does not believe that any VA claimant, let alone one who has been suffering from a serious service-connected psychiatric disorder for 13 years, could understand the basis for a reduction in his or her compensation based on the BVA decision in this case. Similarly, informed judicial review of that decision is not possible. Specifically, the Board's decision is deficient in (1) failing to evaluate and state the

reasons or bases for its findings and conclusions as to the sworn testimony of the appellant and his sister (*see Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991); *Hatlestad*, at 170; *Smith v. Derwinski*, 1 Vet. App. 235, 237 (1991)); (2) apparently failing to review or comment on or, in any case, set forth its evaluation of, the full psychiatric history of the appellant; and (3) failing to discuss and, if indicated, apply certain VA regulations that may be applicable to the appellant's case. Further discussion as to points (2) and (3) follows.

### B.

With respect to potentially applicable regulations, the BVA decision fails to cite, let alone analyze the applicability of, any regulations relating specifically to adjudications involving reductions of ratings and to the evaluation of psychiatric disabilities.

This is a rating reduction case, not a rating increase case. Yet, the Board, at the outset, stated "THE ISSUE" as: "Entitlement to *an increased evaluation* for anxiety neurosis with depression *currently rated 50 percent disabling."* *Peyton*, loc. no. 010075, at 1 (emphasis added). Then, in its "ORDER" section, the Board treated the issue as being whether an *increase* from a 50–percent rating was warranted and concluded that it was not. *Peyton*, loc. no. 010075, at 5. Perhaps this is why the decision ignores 38 C.F.R. § 3.344(a) (1990), which provides in pertinent part as to rating reductions:

Ratings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction, ... etc., *will not be reduced on any one examination,* except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.... Moreover, though material improvement in the physical or mental condition is clearly reflected the rating agency will be considered [sic] whether the evidence makes it *reasonably certain that the improvement will be maintained* under the ordinary conditions of life.... Rating

boards encountering a change of diagnosis *will exercise caution* in the determination as to whether a change in diagnosis represents no more than a progression of an earlier diagnosis, an error in prior diagnosis or possibly a disease entity independent of the service-connected disability. When the new diagnosis reflects ... personality disorder only, the *possibility* of only temporary remission of a super-imposed psychiatric disease *will be borne in mind.*

38 U.S.C. 3.344(a) (1990) (emphasis added).

Paragraph (b) of that regulation then provides in pertinent part:

(b) *Doubtful Cases. If doubt remains, ... the rating agency will continue the rating in effect,* citing the former diagnosis with the new diagnosis in parentheses, and following the appropriate code there will be added the reference "Rating continued pending reexamination ___ months from this date, § 3.344."

38 U.S.C. § 3.344(b) (1990) (boldface emphasis added).

Finally, paragraph (c) of this section provides:

(c) *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more). They do not apply to disabilities which have not become stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant reduction in rating.

38 U.S.C. § 3.344(c) (1990).

Based on the record in this case, certain aspects of the above regulations (see the emphasized words) may be applicable to this case. If, for example, the Board believes that paragraph (c) of § 3.344 renders paragraphs (a) and (b) of the section inapplicable to the appellant's case, it is incumbent on the Board under section 4004(d)(1) of the law to so state and provide the reasons or bases for that conclusion of law.

On the other hand, if the Board believes that paragraphs (a) and (b) are applicable, then the portions quoted above from those paragraphs must be taken into account and analyzed, and reasons or bases must be provided for the Board's application of those paragraphs. One might conclude, for example, from reviewing the record that there has essentially been no change in the appellant's behavior and life style from 1983 to 1989 but only a change in the way that that behavior and life style is viewed by examining mental health professionals. However, although neither the rating board nor the BVA has expressly concluded that the appellant no longer has an anxiety neurosis with depression, one might read the 1988 and 1989 medical evaluations as so finding.

The BVA decision also fails to cite or discuss two other potentially applicable regulations: 38 C.F.R. §§ 4.127 and 4.128. Section 4.127 (Mental deficiency and personality disorders) provides in pertinent part:

> [P]roperly diagnosed superimposed psychotic disorders developing after enlistment, i.e., mental deficiency with psychotic disorder, or personality disorder with psychotic disorder, are to be considered as disabilities analogous to, and ratable as, schizophrenia, unless otherwise diagnosed.

38 C.F.R. § 4.127 (1990). Section 4.128 (Change of diagnosis) provides:

> Rating boards encountering a change of diagnosis *will exercise caution* in the determination as to whether a change in diagnosis represents no more than a progression of an earlier diagnosis, an error in a prior diagnosis, or possibly a disease entity independent of the service-connected psychiatric disorder.

38 C.F.R. § 4.128 (1990) (emphasis added).

On remand, the Board should consider and apply the above regulations, or if it finds them inapplicable it should state the reasons for that finding.

### C.

The Court notes that this case involves a veteran of 12 years' active-duty service who was apparently found to have a psy-chiatric disability at the time of discharge and has been consistently rated by VA for the last 13 years as suffering from that service-connected psychiatric disability, with escalating and deescalating rating levels. In reviewing the record on appeal, the Court was not able to obtain the requisite full picture of the appellant's psychiatric condition over this period of time, which, the Court believes, is necessary to an understanding and evaluation of the veteran's current condition. Since the BVA's decision did not recite any psychiatric evidence earlier than 1983, the court concludes that the Board, despite VA regulations to the contrary, did not have those records before it either. *See* 38 C.F.R. § 4.130 (1990) ("full consideration of the whole [medical] history" is necessary to determine degree of psychiatric disability); 38 C.F.R. § 3.303(a) (1990) ("each disabling condition shown by a veteran's service records ... must be considered on the basis of ... his medical records"). The Court trusts that, in readjudicating the case, the Board will ensure that it reviews the appellant's entire psychiatric medical history.

Finally, the record on appeal is virtually devoid of any evidence with regard to the veteran's employment record or unemployability, except for the quotation from the 1983 medical evaluation set forth above. Since the rating schedule for psychiatric disabilities is based primarily on impairment of a claimant's "industrial adaptability", 38 C.F.R. § 4.132 (1990), the Court finds this evidentiary absence quite puzzling.

### III. CONCLUSION

For the foregoing reasons, the Board's March 15, 1990, decision is vacated and the matter is remanded to the Board for readjudication in accordance with 38 U.S.C. § 4004(d)(1) and *Gilbert* and for disposition in accordance with this opinion.

VACATED AND REMANDED.