Citation Nr: 1441516 
Decision Date: 09/17/14 Archive Date: 09/22/14

DOCKET NO. 11-30 753 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to an initial rating of 50 percent for posttraumatic stress disorder (PTSD) for the time period from January 25, 2011 to July 18, 2012.

2. Entitlement to service connection for coronary artery disease (CAD).


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

T. Mainelli, Counsel


INTRODUCTION

The Veteran served on active duty from October 1965 to September 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma (hereinafter Agency of Original Jurisdiction (AOJ)). 

A March 2011 AOJ decision denied a claim of entitlement to service connection for CAD. A July 2011 AOJ decision awarded service connection for PTSD and assigned an initial 30 percent rating effective the date VA received the Veteran's claim - January 25, 2011. In a notice of disagreement (NOD) filed in June 2012, the Veteran specifically limited his appeal to the issue of entitlement to a 50 percent rating for his PTSD. After further development, the AOJ awarded a 50 percent rating for PTSD effective July 19, 2012. In October 2012, the Veteran argued that his 50 percent rating should be extended to the date service connection was awarded, i.e., January 25, 2011. He specifically stated that "I DON'T DISAGREE" with the assigned 50 percent rating. Similarly, in a VA Form 9 filing (Appeal to Board of Veterans' Appeals) received in July 2013, the Veteran specifically stated that his "ONLY ISSUE" of dispute was the AOJ's denial of a 50 percent rating effective to the date he filed his claim.

Additionally, the Board observes that the Veteran timely initiated an appeal with respect to the AOJ's initial assignment of a 30 percent rating for PTSD. During the appeal period, the AOJ assigned a 50 percent rating effective July 19, 2012 and, thus, assigned a "staged" rating for the initial rating. Where the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999). 

The Board further observes that, as a claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, it follows that such a claim remains in controversy where less than the maximum available benefit is awarded unless a claimant expresses an intent to limit the appeal to entitlement to a specific disability rating. AB v. Brown, 6 Vet. App. 35, 38 (1993). Here, the Veteran has unequivocally stated on three occasions, to include his NOD and substantive appeal, that his appeal would be satisfied with a 50 percent rating for the entire appeal period. Thus, the Veteran has specifically limited his appeal to the propriety of the initially assigned rating for PTSD for the period from January 25, 2011 to July 18, 2012.

In an Informal Hearing Presentation dated July 2014, the Veteran's representative acknowledged the Veteran's argument that he sought a 50 percent rating for the entire appeal period. However, the Veteran's representative also argued for entitlement to a rating greater than 70 percent for PTSD since July 29, 2012 based upon his own review of the record rather than any request by the Veteran. As stated above, the Veteran had previously and unequivocally limited his appeal in his NOD and substantive appeal to the assignment for a 50 percent rating for the entire appeal period. The AOJ's adjudicative actions have been limited to reviewing the errors of fact and/or law advanced by the Veteran on this issue. Thus, the Board finds that it has no jurisdiction to consider any issue other than entitlement to a 50 percent rating for PTSD for the time period from January 25, 2011 to July 18, 2012. The Veteran and/or his representative, of course, are free to raise a claim of entitlement to an increased rating at any time.

In addition to the paper claims folder, the record on appeal includes documents stored electronically in Virtual VA and the Veterans Benefits Management System (VBMS). Virtual VA contains VA clinic records which are not associated with the paper claims folder. The AOJ has not considered VA clinic records added to the record in August 2013 in its adjudicative actions for either claim on appeal. However, as addressed below, the Board grants in full the benefits being sought on appeal for both claims. Thus, the Board finds that no prejudice results to the Veteran in adjudicating his claims at this time.



FINDINGS OF FACT

1. For the period from January 25, 2011 to July 18, 2012, the Veteran's PTSD more closely approximated occupational and social impairment with deficiencies in most areas such as judgment, thinking and mood due to recurring suicidal ideations, severe weekly panic attacks, disturbance in motivation and mood, impaired concentration and social withdrawal.

2. The Veteran was exposed to herbicides in the Republic of Vietnam during his active service and has current diagnosis of CAD, which is presumed due to his herbicide exposure.


CONCLUSIONS OF LAW

1. The criteria for an initial rating of 50 percent for PTSD for the period from January 25, 2011 to July 18, 2012 have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b), 4.1-4.14, 4.40, 4.45, 4.130, Diagnostic Code (DC) 9411 (2013).

2. The criteria for entitlement to service connection for CAD have been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2002); 38 C.F.R. §§ 3.306, 3.307, 3.309 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the decision below, the Board grants in full all benefits sought on appeal by the Veteran. Thus, any potential VCAA deficiencies have not been prejudicial to the Veteran and need not be discussed.

Initial Rating Claim

The Veteran seeks a 50 percent rating for PTSD for the time period prior to July 19, 2012. He essentially argues that the symptomatology demonstrated on VA examination conducted on July 19, 2012, which led to his award of a 50 percent rating for PTSD, had been present since he filed his original service connection claim on January 25, 2011.

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

If there is disagreement with the initial rating assigned following a grant of service connection, separate ratings can be assigned for separate periods of time, based on the facts found. Fenderson, 12 Vet. App. 119, 126 (1999). Reasonable doubt as to the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

For the time period from January 25, 2011 to July 18, 2012, the Veteran's service-connected PTSD has been evaluated as 30 percent disabling under the criteria of DC 9411. See 38 C.F.R. § 4.130. A 30 percent rating contemplates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occasional tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal) due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

Beginning on July 19, 2012, the Veteran has been awarded a 50 percent rating which contemplates occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

The nomenclature employed in the portion of VA's Rating Schedule that addresses service-connected psychiatric disabilities is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "DSM-IV"). 38 C.F.R. § 4.130. DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. Higher scores correspond to better functioning of the individual. 

Under DSM-IV, GAF scores ranging between 51 and 60 are assigned when there are moderate symptoms (like flat affect and circumstantial speech, and occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). 

GAF scores ranging between 41 and 50 are assigned when there are serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

GAF scores ranging between 31 and 40 are assigned when there is some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family and is unable to work). 

GAF scores ranging between 21 and 30 are assigned when behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation ) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

Symptoms listed in VA's general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

Descriptive words such as "slight," "moderate" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. The use of descriptive terminology by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision. 38 U.S.C.A. § 7104(a); 38 C.F.R. §§ 4.2, 4.6.

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. Further, when evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely the basis of social impairment. 38 C.F.R. § 4.126(b).

Briefly summarized, the Veteran has been assigned a 50 percent rating for PTSD effective the date of a VA Compensation and Pension (C&P) examination conducted on July 19, 2012. At that examination, the Veteran endorsed PTSD symptoms of worrying, avoidance, sympathetic nervous system response, impairment of sleep, intrusive recollections, panic attacks, persistent fear of being subject to another attack, and avoidance of behaviors which attempted to prevent precipitating another attack by perceived triggers. The Veteran also had depressive symptoms of loss of interest, inappropriate guilt, poor concentration, reduction in energy and variable appetite. These symptoms were encompassed among diagnoses of PTSD, severe recurrent major depressive disorder, and panic disorder without agoraphobia. The examiner found no basis to differentiate between symptomatology attributable to PTSD and the other diagnoses, and it was noted that the Veteran's panic disorder was a worsening of the anxiety component of his PTSD and that his depression was also a result of his PTSD.

Overall, the July 2012 VA examiner found that the Veteran demonstrated PTSD symptomatology of depressed mood, anxiety, suspiciousness, panic attacks which occurred weekly or less often, near continuous panic or depression affecting his ability to function independently, appropriate and effectively, chronic sleep impairment, flattened affect, impaired judgment, impaired abstract thinking, disturbances in motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, impaired impulse control such as unprovoked irritability with violence, and neglect of personal appearance and hygiene. A GAF score of 50 was assigned, which represented occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking or mood.

On a retrospective review of the record, the Board finds that the frequency and severity of symptomatology demonstrated by the Veteran on the VA C&P examination conducted on July 19, 2012 has been present since the receipt of the original claim. 

In this respect, the Veteran first sought VA treatment for psychiatric symptoms in December 2010, at which time he demonstrated symptomatology of depression, low energy, low motivation, poor concentration, short-term memory issues, sleep impairment, slowed speech, and increased latency of response. He had a variable appetite. Notably, the Veteran had difficulty describing his emotions. He had a history of suicidal ideations and attempts as well as a history of panic attacks. The mental status examination was significant for a slightly slowed response to questions, constricted affect, and a sad and tearful mood. His insight and judgment was described as fair. He was placed on anti-depressive medications. The Veteran was initially assigned a GAF score of 45.

Thereafter, the Veteran was contacted by a VA suicide prevention coordinator who obtained his agreement to seek VA counseling with any further suicidal ideations. He described some improvement of mood with use of medication, but he continued to describe panic attacks, restlessness, passive suicidal ideations and feeling scared and jittery. He further described symptoms of hyperarousal and hypervigilance.

In March 2011, a VA C&P examiner found that the Veteran manifested "severe" PTSD symptoms of intrusive recollections, and avoidance behaviors. He demonstrated sympathetic nervous system arousal which affected his total daily functioning due to a decrease in energy and concentration, no longer performing activities previously enjoyed, poor task completion, and sleep impairment. In addition to PTSD, the Veteran manifested major depressive disorder with symptoms of depressed and irritable mood, reduced interests, feelings of guilt and worthlessness, reduced energy and concentration, variable appetite, and psychomotor retardation/agitation. He also had "severe" symptoms of panic disorder without agoraphobia manifested by overwhelming panic attacks with racing heart, excessive sweating, hyperventilation, constant fear of having another panic attack, and avoidance of perceived triggers of panic attacks, which affected total daily functioning of "social withdrawal, irritability and conflicts with others, social anxiety and avoidance behaviors."

The Veteran's mental status examination was significant for anxiety, a pervasive depressed mood which impacted all facets of work and home life, social withdrawal, suspiciousness, persistent anxiety, sleep disturbances with nightmares, intrusive recollections, avoidance behaviors, exaggerated startle response, and sympathetic nervous system arousal. He demonstrated impaired attention/focus which interfered with work performance and daily task completion, often forgetting the task at hand. Panic attacks, characterized by racing heart, hyperventilation, and overwhelming or incapacitating anxiety, were present and occurred more than once per week. Furthermore, the Veteran demonstrated signs of suspiciousness. 

The March 2011 C&P examiner diagnosed PTSD, major depressive disorder, and panic disorder without agoraphobia, which were all related to service-connected PTSD. A GAF score of 55 was assigned. The Veteran's overall symptoms were described as significantly affecting his ability to maintain viable working relationships with others with some occasional interference in performing activities in daily living due to poor energy and concentration leading to poor task completion. The examiner also stated that the best description of the Veteran's current psychiatric impairment was occupational and social impairment with occasional decrease in work efficiency with intermittent ability to perform occupational tasks although generally functioning satisfactorily with routine behavior, self-care and normal conversation.

Thereafter, the Veteran was briefly admitted for VA psychiatric care in January 2012 due to suicidal ideations. He was described as having poor coping skills and impaired judgment with chronic-type suicidality. A GAF score of 30 was assigned.

Here, the Veteran first sought treatment in December 2010 due to symptomatology of depression, low energy, low motivation, poor concentration, short-term memory issues, sleep impairment, slowed speech, increased latency of response, variable appetite, suicidal ideations, and panic attacks. This examiner assessed the Veteran's overall psychological, social, and occupational functioning with a GAF score of 45, which is lower than the GAF score of 50 provided by the July 19, 2012 VA examiner, which helped support the 50 percent rating. 

Prior to July 19, 2012, the Veteran also demonstrated examples which would justify a 50 percent rating such as panic attacks more than once per week, poor task completion, disturbances in motivation and mood, and social withdrawal. A VA examiner in March 2011 assigned a GAF score of 55, which is consistent with moderate symptoms, or moderate difficulty in social, occupational, or school functioning. However, this VA examiner also characterized the Veteran as having "severe" symptoms of PTSD and panic disorder.

As required by Maeurhan, the Board must look at all the factors and evidence identified above to determine whether the Veteran met or more closely approximated the criteria for a 50 percent rating for the time period from January 25, 2011 to July 18, 2012. When considering the frequency and severity of panic attack symptoms, the frequency of suicidal ideations which included the need for hospitalization and the examiner assessments of the Veteran's psychological, social and occupational functioning (GAF scores of 30, 45, 50, and 55), the Board finds that the Veteran's PTSD more closely approximated occupational and social impairment with deficiencies in most areas such as judgment, thinking and mood due to recurring suicidal ideations, severe weekly panic attacks, disturbance in motivation and mood, impaired concentration and social withdrawal. 

Thus, the Board finds that the criteria for a 50 percent rating for PTSD have been met for the time period from January 25, 2011 to July 18, 2012. The claim, therefore, is granted. As noted in the Introduction, the Veteran has specifically limited his appeal to the assignment of a 50 percent rating for PTSD for the time period from January 25, 2011 to July 18, 2012. As this benefit has been granted in full, the Board has no further jurisdiction to consider any other matter.

Service Connection Claim

The Veteran seeks to establish his entitlement to service connection for CAD. The record reflects that he served in the Republic of Vietnam during the Vietnam War. Thus, the Veteran is presumed to have been exposed to an herbicide agent based upon his wartime service in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). The term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, specifically: 2,4-D; 2,4,5-T and its contaminant TCDD; cacodylic acid; and picloram. 38 U.S.C.A. § 1116(a)(4); 38 C.F.R. § 3.307(a)(6)(i). 

Effective August 31, 2010, VA published in the Federal Register a final rule amending 38 C.F.R. § 3.309(e) to establish presumptive service connection for ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina) due to herbicide exposure. 75 Fed. Reg. 53,202 (August 31, 2010). 

For purposes of 38 C.F.R. § 3.309(e), the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease. 38 C.F.R. § 3.309(e), Note 3.

Here, the record reflects that the Veteran was diagnosed with atypical chest pain treated with nitroglycerin (NTG) at the start of the appeal period. His initial diagnostic testing, to include electrocardiogram and exercise stress tests, did not reflect underlying CAD. However, the Veteran eventually underwent coronary angiography at VA in December 2011. This surgical procedure was interpreted as showing CAD in the right and left coronary arteries, and resulted in a diagnosis of non-obstructive CAD. 

Notably, the AOJ's denial of the claim did not have benefit of review of the December 2011 coronary angiography results as these records were associated with Virtual VA in August 2013. In light of this diagnostic testing, the Board finds that the Veteran meets the definition of CAD as set forth in 38 C.F.R. § 3.309(e). Therefore, the Board finds that the Veteran was exposed to herbicides in the Republic of Vietnam during his active service and that he holds a current diagnosis of CAD which, pursuant to 38 C.F.R. § 3.309(e), is presumed due to his herbicide exposure. The criteria for establishing service connection for CAD, therefore, are met. The claim is granted.

ORDER

An initial 50 percent rating for PTSD for the period from January 25, 2011 to July 18, 2012 is granted, subject to the legal authority governing the payment of VA compensation.

Service connection for CAD is granted.



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs