Citation Nr: 1826227 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 13-30 791 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial evaluation in excess of 10 percent for atherosclerotic coronary artery disease (ACAD) status-post myocardial infarction with stent placement prior to August 12, 2013, and in excess of 30 percent thereafter.


REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs


ATTORNEY FOR THE BOARD

D.S. Chilcote, Associate Counsel





INTRODUCTION

The Veteran served on active duty from May 1966 to February 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia, and St. Petersburg, Florida. In a June 2011 rating decision, the RO in Huntington, West Virginia granted service connection for ACAD status-post myocardial infarction with stent placement and assigned a 10 percent evaluation effective July 18, 2008. At the Veteran's request, jurisdiction was subsequently transferred to the RO in St. Petersburg, Florida.

In a January 2018 rating decision, the St. Petersburg RO increased the Veteran's evaluation to 30 percent, effective from August 12, 2013. Although a higher disability rating was granted, the issue remains in appellate status, as the maximum schedular rating was not assigned from the effective date of the award of service connection. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

In August 2017, the Board remanded the case for further development. The case has since been returned for appellate review.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

 
FINDING OF FACT

For the entire period under consideration, the Veteran's ACAD status-post myocardial infarction and stenting, is manifested by a workload of greater than 5 METs but not greater than 7 METs that results in dyspnea and fatigue; or, evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. It is not manifested by a history of chronic congestive heart failure, or left ventricular dysfunction with an ejection fraction of less than 50 percent.


CONCLUSIONS OF LAW

1. The criteria for an evaluation of 30 percent, but no higher, for ACAD, status-post myocardial infarction and stenting prior to August 12, 2013, have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.7, 4.100, 4.104, Diagnostic Code 7006 (2017). 

2. For the entire appeal period, an evaluation in excess of 30 percent for ACAD, status-post myocardial infarction and stenting have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.7, 4.100, 4.104, Diagnostic Code 7006 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Law and Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7.
 
In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings.

Where the question for consideration is the propriety of the initial rating assigned, evaluation of the evidence since the effective date of the grant of service connection is required. Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). Where VA's adjudication of the claim for increase is lengthy and factual findings show distinct time periods where the service-connected disability exhibits symptoms which would warrant different ratings, different or "staged" ratings may be assigned for such different periods of time. Fenderson, 12 Vet. App. at 126-27. 

The Veteran's service-connected ACAD is currently assigned a 10 percent evaluation from July 18, 2008, to August 12, 2013, and a 30 percent evaluation thereafter, pursuant to 38 C.F.R. § 4.104, Diagnostic Code 7006.

For rating diseases of the heart, one MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104 , Note 2.

Under Diagnostic Code 7006, a 10 percent evaluation is assigned when there is a workload of greater than 7 METs but not greater than 10 METs that results in dyspnea, fatigue, angina, dizziness, or syncope, or; continuous medication is required. A 30 percent evaluation is contemplated when there is a workload of greater than 5 METs but not greater than 7 METs that results in dyspnea, fatigue, angina, dizziness, or syncope, or; evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A 60 percent evaluation is warranted when there is more than one episode of acute congestive heart failure in the past year, or; a workload of greater than 3 METs but not greater than 5 METs that results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent evaluation is assigned when there is chronic congestive heart failure, or; a workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. A 100 percent evaluation is also warranted during and for three months following a myocardial infarction, documented by laboratory tests.

Initially, the Board notes that the Veteran had a myocardial infarction in 2000. The appeal period begins on July 18, 2008. Thus, more than three months had passed following the myocardial infarction, and a 100 percent evaluation cannot be granted on this basis during either time period on appeal.

I. Prior to August 12, 2013

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is entitled to a 30 percent evaluation for ACAD prior to August 12, 2013.

The Veteran had an EKG and echocardiogram in June 2011. There was no evidence of cardiac hypertrophy or dilatation. Left ventricular ejection fraction was 59 percent. The June 2011 Disability Benefits Questionnaire (DBQ) indicates that the Veteran reported dyspnea at 5 to 7 METs (consistent with such activities as golfing without a cart, mowing the lawn with a push mower, or heavy yard work). Thus, resolving any reasonable doubt in favor of the Veteran, the Board finds that a 30 percent evaluation is warranted for this time period.

The Board has also considered whether the Veteran is entitled to an initial evaluation in excess of 30 percent prior to August 12, 2013. However, the evidence does not show that he had more than one episode of acute congestive heart failure in the past year; a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or, left ventricular dysfunction with an ejection fraction of 30 to 50 percent. VA treatment records from May 2010 state that he had a stress test in June 2009 that was negative for ischemia. Therefore, the Board concludes that the Veteran is entitled to a 30 percent evaluation, but no higher, for his ACAD prior to August 12, 2013.

II. On or After August 12, 2013

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to an initial evaluation in excess of 30 percent for ACAD on or after August 12, 2013.

The evidence does not show that the Veteran has had more than one episode of acute congestive heart failure in the past year; or, workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness or syncope; or, left ventricular dysfunction with an ejection fraction of 30 to 50 percent. In this regard, the August 2013 VA examiner stated that the Veteran has not had congestive heart failure, and testing revealed an ejection fraction of 55 to 60 percent. A diagnostic exercise test was not conducted. The Veteran was on a beta blocker, and therefore, a stress test was not the best indicator of his MET threshold. August 2013 VA Examination Report at 3. The Veteran reported symptoms including dyspnea, fatigue, and dizziness at 3 to 5 METs (consistent with activities such as light yard work, mowing the lawn or brisk walking). Echocardiogram results showed borderline hypertrophy.

An October 2013 DBQ indicates that the Veteran reported symptoms of dyspnea and fatigue at 3 to 5 METs. Testing revealed a left ventricular ejection fraction of 58 percent. There was no evidence of cardiac hypertrophy or dilatation.

Stress tests conducted in May 2015 and June 2017 were normal. An October 2017 VA examination estimated interview-based METs greater than 7 based on the Veteran's cardiac functionality. The October 2017 VA examiner noted that the Veteran had numerous comorbidities affecting his overall METs level; however, he denied experiencing symptoms attributable to a cardiac condition with any level of physical activity. October 2017 VA Examination Report at 7-8. Testing revealed an ejection fraction of 55 to 60 percent, with mild left ventricular hypertrophy. The October 2017 VA examiner found that his ejection fraction of 55 to 60 percent in the echocardiogram was a more accurate determination of his cardiac function than his METs level. Id. at 8.

While the August/October 2013 METs findings in the 3 to 5 range as reported by the Veteran would otherwise warrant a higher evaluation, the Board concludes that the evidence of normal left ventricular size and function with ejection fraction measurements well within normal ranges, more accurately depicts the Veteran's actual heart function as indicated by the October 2017 VA examiner. An actual stress test was contraindicated because the Veteran is on beta blockers and a stress test would not be the best indicator of METs testing or actual heart function. A June 2017 nuclear stress test was normal and ejection fraction testing was consistently in the 55 to 60 percent range. As such, the criteria for an initial evaluation in excess of 30 percent have not been met for the period beginning on August 12, 2013.

The Veteran and his representative have not raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to an initial 30 percent evaluation, but no higher, for ACAD prior to August 12, 2013, is granted.

For the entire appeal period, entitlement to an initial evaluation in excess of 30 percent for ACAD is denied.



____________________________________________
A.J. Spector
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs