﻿Citation Nr: AXXXXXXXX
Decision Date: 02/28/19 Archive Date: 02/28/19

DOCKET NO. 180923-514
DATE: February 28, 2019

ORDER

An initial 70 percent disability rating, and no higher, for posttraumatic stress disorder (PTSD) is granted.

FINDINGS OF FACT

1. Since the grant of service connection, the Veteran’s PTSD has been manifested by occupational and social impairment with deficiencies in areas such as work, thinking and mood due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships.

2. The Veteran’s PTSD has not caused more severe manifestations that more nearly approximate total occupational and social impairment.

CONCLUSION OF LAW

The criteria for an initial disability rating disability of 70 percent, and no higher, for PTSD have been met. 38 U.S.C. § 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 9411.

REASONS AND BASES FOR FINDING AND CONCLUSION 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran had active service from December 2008 to August 2017. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2018 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke which granted service connection for PTSD, assigning a 50 percent disability rating effective August 25, 2017. Thereafter, the Veteran submitted a timely notice of disagreement as to the March 2016 rating decision.

In May 2018, the Veteran selected the Higher-Level Review lane when he submitted his RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. In September 2018, the Veteran timely appealed to the Board and requested the evidence submission lane, submitting a January 2018 prison treatment record.

Legal Criteria

Disability ratings are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities. 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

In rating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran’s PTSD is rated under DC 9411. Pursuant to DC 9411, a 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships. 

A 100 percent rating is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; gross inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.71a, DC 9400, General Rating Formula for Mental Disorders.

Symptoms listed in VA’s general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission must be considered. In addition, the rating must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. Further, when rating the level of disability from a mental disorder, the extent of social impairment is considered, but a rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126.

Analysis

The Veteran contends that he should be assigned a higher rating for his PTSD. Specifically, the Veteran is seeking a 70 percent disability rating for his PTSD. The AOJ found that the Veteran’s PTSD results in occupational and social impairment with reduced reliability and productivity and assigned a 50 percent rating under DC 9411.

Initially, the Board notes that the Veteran is currently incarcerated due to murdering his wife in September 2015 and is not scheduled to be released until 2038. He is seeking disability compensation to help his former in-laws raise his two young children.

Evidence relevant to the current level of severity of the Veteran’s PTSD includes a VA psychiatric examination report dated in March 2018. During this examination, the examiner diagnosed PTSD and antisocial personality disorder resulting in occupational and social impairment with reduced reliability and productivity. Significantly, the examiner noted that the Veteran’s occupational life was not affected by his psychiatric disability but that there was significantly social impairment due to hypervigilance from PTSD causing him anxiety in public places and avoidance of going to public places. In fact, the Veteran’s refusal to go out in public for activities affected his relationship with his late wife and his antisocial personality resulted in anger towards others, ultimately ending in the Veteran murdering his wife due to her alleged infidelity. He reported having only one friend whom he interacted with, his cellmate, but only because they are in the same room and he has to talk to him. Otherwise, he avoids other people. He spends time in the gym lifting weights but does not care to interact with other inmates.

The Veteran spent the first two years of his incarceration with no assigned duties, spending his time reading and exercising. However, he was too restless with limited activity and recently began working 30 hours per work in the prison laundry. He endorsed being known to work excessively hard at the laundry, a hallmark of his approach to everything he did in the past, including schoolwork and military duties. He therefore performed duties well in the laundry, seeming to bury himself in the work to avoid thinking about his situation. 

The examiner noted that the Veteran endorsed significant PTSD symptoms including reexperiencing of trauma, avoidance of trauma memories, and arousal to include hypervigilance, sleep disturbance, irritability, and feeling distant from other people. Antisocial features, which predate military service and likely relate to his growing up in a dysfunctional and abusive environment, result in physical aggression (including murder) and significant anger. The examiner also noted the following symptoms pertinent to the rating criteria: depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, and difficulty in establishing and maintaining effective work and social relationships. 

On behavioral observation, the examiner noted that the Veteran’s mood was anxious and irritable and had a tense affect which became more stressed and agitated as the assessment wore on. Speech revealed normal rate and flow. The Veteran was oriented to person and time but place was poor as he had no guess as to the location of the prison. Immediate recall was good and delayed recall was fair. Attention and concentration were poor but fund of general knowledge was good, all by testing. The Veteran’s appetite was described as poor as he “forces himself” to eat. Sleep was disturbed by problems obtaining and maintaining sleep with racing thoughts of his deployment, his fall from grace in life, and anger at the state for the character of his charges. Panic attacks related to hypervigilance reportedly occurred several times per week. Suicidal thoughts were entertained before incarceration when going through the problems related to his wife’s infidelity. The Veteran denied mania but described seeing shadows (likely from scanning hyper vigilantly) and heard his name called while reading. According to the examiner, these symptoms do not meet the criteria for command hallucinations and do not suggest psychosis. Abstract thinking and judgment were good by testing. 

Also of record are January and March 2018 letters from the Veteran’s treating physician in prison. These statements show that the Veteran was first diagnosed with PTSD in November 2016 and that this disability has affected the Veteran in various ways such as memory problems, hypervigilance, detachment in relationships, frequent nightmares, and trouble sleeping. He was treated with medication and both individual and group therapy to address his challenges. 

The Board finds that the evidence supports the grant of a 70 percent disability evaluation for the Veteran’s psychiatric disability. The evidence shows the Veteran to be severely disabled as a result of his service-connected psychiatric disability. Significantly, the Veteran murdered his wife prior to his discharge from service and, since then, has been in prison with limited social interaction. This supports findings of impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships.

As for the potential of a disability rating higher than 70 percent, the Board finds that the evidence does not show the symptomatology required for a 100 percent rating. Significantly, there is no evidence of total occupational and social impairment. 

As required by Mauerhan, the Board has looked at all the factors and evidence identified above to determine whether the Veteran has met or more closely approximated the criteria for a maximum 100 percent rating. However, when considering the overall evaluation of the examples which may support the 100 percent rating, the frequency, duration and severity of symptoms, the Veteran’s capacity for adjustment, and the examiner’s assessments of the Veteran’s overall psychological, social and occupational functioning, the Board must conclude that the Veteran’s PTSD has not met or more closely approximated the criteria for a 100 percent rating at any relevant time. 

In this respect, the Veteran, even at his worst, can efficiently converse with the VA examiner and can generally manage his daily activities on his own. He is not psychotic or out of touch with reality. Overall, his PTSD is not shown to manifest the type, extent and severity of symptoms demonstrating “total occupational and social impairment” within the meaning of the rating schedule at any point pertinent to this appeal. 

In so holding, the Board has generally found the statements of the Veteran to be truthful and credible evidence in support of this claim, which has been relied upon in awarding further compensation. However, even when taking into account this statements, the Board finds that the criteria for a rating greater than 70 percent have not been met. To the extent that the descriptions provided by the Veteran can be construed as supporting a higher rating still, the Board places greater probative weight to the clinical findings of the VA physicians who have greater expertise and training than the Veteran in evaluating the extent and severity of a psychiatric disability. There is no doubt of material fact to be resolved in his favor. 38 U.S.C. § 5107(b). As such, an initial disability rating of 70 percent, and no higher, is warranted.

Finally, the Board notes that a claim for an increased rating includes a claim for a finding of total disability based on individual unemployability (TDIU) where there are allegations of worsening disability and related unemployability. Rice v. Shinseki, 22 Vet. App. 447 (2009). While the Veteran has been incarcerated during the appeal period, the March 2018 VA examination report shows that he has been working practically full-time in the prison laundry. As such, no TDIU claim is inferred.

 

BETHANY L. BUCK

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD April Maddox, Counsel