Citation Nr: 1829349 
Decision Date: 05/29/18 Archive Date: 06/12/18

DOCKET NO. 14-01 946 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to an initial evaluation in excess of 20 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis prior to September 22, 2009 (excluding a temporary total evaluation from December 5, 2007, to February 1, 2008).

2. Entitlement to an initial evaluation in excess of 40 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis for the period from September 22, 2009, to January 23, 2018.

3. Entitlement to an initial evaluation in excess of 60 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis on or after January 23, 2018.


REPRESENTATION

Appellant represented by: Robert C. Brown, Jr., Attorney

WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K.M. Walker, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1978 to April 1981 and from May 1988 to August 1988. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2013 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. In that decision, the RO granted service connection for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis and assigned a 20 percent evaluation effective from November 16, 2007, a 100 percent evaluation based on surgical or other treatment necessitating convalescence effective from December 5, 2007, a 20 percent evaluation effective February 1, 2008, and a 40 percent evaluation effective from September 22, 2009.

In January 2017, the Veteran testified at a video conference hearing before the undersigned Veterans Law Judge. A transcript is of record. 

The Board remanded the case for further development in November 2017. That development has been completed, and the case has since been returned to the Board.

During the pendency of the appeal, in a February 2018 rating decision, the RO increased the evaluation to 60 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis, effective January 23, 2018. Nevertheless, a claimant will generally be presumed to be seeking the maximum benefit allowed by law or regulations, and a claim remains in controversy where less than the maximum benefit available is awarded. AB v. Brown, 6 Vet. App. 35, 38 (1993). Therefore, the issue remains in appellate status and has been recharacterized to reflect the staged rating. 

The Board also notes that the Veteran has perfected an appeal for the issue of entitlement to service connection for a traumatic brain injury. See May 2008 statement of the case and VA Form 9. However, the RO has not certified that issue to Board, and it is unclear whether the RO is undertaking any further development or adjudicative actions, to include scheduling the Veteran for a Board hearing as requested in his substantive appeal. Therefore, the Board will not address the issue at this juncture.

This appeal was processed using the Veterans Benefits Management System (VBMS) electronic claims processing systems. Accordingly, any future consideration of this Veteran's case should take into account the existence of these electronic records.


FINDINGS OF FACT

1. For the period prior to September 22, 2009, the Veteran's painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis was not productive of daytime voiding intervals of less than one hour or awakening to void five or more times per night; did not require the wearing of absorbent materials that must be changed two to four times per day; and was not manifested by urinary retention requiring intermittent or continuous catheterization. He also did not have urinary tract infections or renal dysfunction.

2. For the period from September 22, 2009, to January 23, 2018 the Veteran's painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis did not require the wearing of absorbent materials which must be changed more than four times per day. He also did not have renal dysfunction and is otherwise assigned the maximum schedular rating available for voiding dysfunction and urinary tract infections.

3. Since January 23, 2018, the Veteran's service-connected painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis has been assigned the maximum schedular ratings available for urine leakage, urinary frequency, obstructed voiding, and urinary tract infections, and he has not been shown to have renal dysfunction.


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 20 percent prior to September 2009, for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.115a, 4.115b, Diagnostic Code 7517-7527 (2017).

2. The criteria for an initial evaluation in excess of 40 percent from September 22, 2009, to January 23, 2018, for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.115a, 4.115b, Diagnostic Code 7517-7527 (2017).

3. The criteria for an initial evaluation in excess of 60 percent on or after January 23, 2018, for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.115a, 4.115b, Diagnostic Code 7517-7527 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings liberally does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).


Law and Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7.

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where the question for consideration is the propriety of the initial rating assigned, evaluation of the evidence since the effective date of the grant of service connection is required. Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). Where VA's adjudication of the claim for increase is lengthy and factual findings show distinct time periods where the service-connected disability exhibits symptoms which would warrant different ratings, different or "staged" ratings may be assigned for such different periods of time. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007); Fenderson, 12 Vet. App. at 126-27. 

In this case, the Veteran's painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis is currently assigned a 20 percent evaluation effective prior to September 22, 2009 (excluding a temporary total evaluation from December 5, 2007, to February 1, 2008); a 40 percent evaluation from September 22, 2009, to January 23, 2018; and a 60 percent evaluation since January 23, 2018, pursuant to 38 C.F.R. § 4.115b, Diagnostic Codes 7517-7527. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. 38 C.F.R. § 4.27. If the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen (that is, basis first, the residual always come second). 38 C.F.R. § 4.27. 

Diagnostic Code 7517 provides that an injury of the bladder should be rated as voiding dysfunction.

Under Diagnostic Code 5257, prostate gland injuries, infections, hypertrophy, and postoperative residuals are evaluated as voiding dysfunction or urinary tract infection, whichever is predominant. 

Voiding dysfunction is rated under the three subcategories of urine leakage, urinary frequency, and obstructed voiding. 38 C.F.R. § 4.115a. For urine leakage, a 20 percent evaluation is assigned for continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence requiring the wearing of absorbent material which must be changed less than 2 times per day. A 40 percent rating is assigned where the wearing of absorbent materials must be changed 2 to 4 times per day. The maximum rating of 60 percent is warranted when there is urinary leakage requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day. 

For urinary frequency, a 20 percent rating is assigned for daytime voiding intervals between one and two hours, or; awakening to void three to four times per night. A maximum 40 percent evaluation is assigned for daytime voiding intervals less than one hour, or; awakening to void 5 or more times per night.

For obstructed voiding, a 30 percent rating requires urinary retention requiring intermittent or continuous catheterization. 38 C.F.R. § 4.115a.

For urinary tract infection, a 10 percent evaluation is warranted when there is long-term drug therapy, one to two hospitalizations per year, and/or intermittent intensive management is required. A 30 percent evaluation is warranted when there is recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or continuous intensive management. If urinary tract infections result in poor renal function, the disorder is rated as renal dysfunction. 


I. Prior to September 22, 2009 (excluding a temporary total evaluation from December 5, 2007, to February 1, 2008)

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to an evaluation in excess of 20 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis prior to September 22, 2009.

The Veteran has not been shown to have daytime voiding intervals of less than one hour or awakening to void five or more times per night. The Veteran has never reported, nor does the medical evidence show, such urinary frequency. Rather, a January 2007 treatment record noted the Veteran's report of voiding one to two times per night, and an August 2007 medical record indicated that he voided every three to four hours per night. He also told the May 2009 VA examiner that he voids every two to three hours. As such, the Veteran has not been shown to meet the criteria for a higher initial evaluation for urinary frequency.

The evidence also does show that the Veteran had urinary leakage or urinary incontinence which required the wearing of absorbent material that had to be changed two to four times per day during this time period. In fact, the Veteran denied having urinary incontinence at the May 2009 VA examination.

In addition, the Veteran has not been shown to meet the criteria for a higher evaluation for obstructed voiding which requires catheterization. In fact, during the May 2009 VA examination, the Veteran reported that he did not require any catheterization or intermittent or continuous drainage processes. 

The Board further notes that there is no indication that the Veteran had urinary tract infections or renal dysfunction during this time period. In fact, the Veteran later testified at the January 2017 hearing that he had never developed urinary tract infections subsequent to his military service as a result of his service-connected disability.

The Board does acknowledge the Veteran's January 2017 hearing testimony that there had been no change in his symptoms as of September 22, 2009, and that his disability had remained the same. His representative essentially asserted that he should have been granted the 40 percent evaluation prior to that date. However, as discussed above, it was not factually ascertainable that the Veteran met the criteria for a 40 percent evaluation prior to September 22, 2009. Moreover, even if the Veteran's symptoms were the same both prior to and after that date, the September 2009 private record did not document findings actually warranting a 40 percent evaluation. Indeed, the report notes that the Veteran had urinary frequency every one to two hours (not indicative of daytime voiding intervals of less than one hour or awakening to void five or more times per night). Nor does the report show that the Veteran had urinary leakage or urinary incontinence which required the wearing of absorbent material that had to be changed two to four times per day; obstructed voiding which required catheterization; urinary tract infections; or renal dysfunction.

Based on the foregoing, the Board finds that the preponderance of the evidence is against am initial evaluation in excess of 20 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis prior to September 22, 2009.


II. From September 22, 2009, to January 23, 2018

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to an evaluation in excess of 40 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis for the period from September 22, 2009, to January 23, 2018.

Initially, the Board notes that a 40 percent evaluation is the maximum evaluation available for urinary frequency, and a 30 percent evaluation is maximum rating for obstructed voiding and a urinary tract infection. As such, an increased evaluation cannot be granted under that rating criteria.

In addition, the Veteran has not been shown to have had urinary leakage requiring the use of an appliance or the wearing of absorbent materials which must be changed more than four times per day. Although a September 2009 private examination report indicated that he had urine leakage, there was no indication that the Veteran wore absorbent materials or needed to change them more than four times per day. The Veteran did testify at the January 2017 hearing that he had to wear pads, but he indicated that he had to change them four times per day. Thus, his own testimony does not suggest that he changed the pads frequently enough to warrant an evaluation in excess of 40 percent for urinary leakage, as the rating criteria specifically indicate that the changing of materials must exceed four times. 

There is also simply no evidence that the Veteran had renal dysfunction during this time period. Moreover, as noted above, the Veteran testified at the January 2017 hearing that he had never developed urinary tract infections subsequent to his military service. Thus, he could not have any renal dysfunction resulting from an infection.

Based on the foregoing, the Board finds that the preponderance of the evidence is against am initial evaluation in excess of 40 percent for the period from September 22, 2009, to January 23, 2018.


III. On or After January 23, 2018

In considering the evidence of record under the laws and regulations set forth above, the Board concludes the Veteran is not entitled to an evaluation in excess of 60 percent for his service-connected painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis on or after January 23, 2018.

The Board acknowledges the Veteran's reported symptoms, such as urine leakage, increased urinary frequency, hesitancy, and a weak and slow stream. Nevertheless, the rating code does not permit an evaluation in excess of 60 percent for this voiding disability. 

In addition, the Veteran is already assigned an evaluation in excess of the 30 percent maximum rating for urinary tract infections. The January 2018 VA examiner also indicated that he did not have a history of recurrent symptomatic bladder or urethral infections.

Moreover, there is no indication that the Veteran has any renal dysfunction. In fact, the January 2018 VA examiner specifically found that there was no renal dysfunction. 

The Board further finds that an increased evaluation cannot be assigned pursuant to other potentially applicable diagnostic codes. However, service connection has already been granted for erectile dysfunction, and he has been awarded special monthly compensation based on the loss of use of a creative organ. The January 2018 VA examiner also indicated that the Veteran did not have any benign or malignant neoplasm or metastases, urethral or bladder calculi, or bladder or urethral fistula. The examiner further stated that the Veteran does not have any other pertinent physical findings, complications, condition, sign, or symptoms.

Accordingly, the Board finds that an increased evaluation is not warranted under any diagnostic code for this time period.


IV. Conclusion

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 368 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to an initial evaluation in excess of 20 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis prior to September 22, 2009, is denied.

Entitlement to an initial evaluation in excess of 40 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis for the period from September 22, 2009, to January 23, 2018, is denied.

Entitlement to an initial evaluation in excess of 60 percent for painful bladder syndrome with chronic pelvic pain syndrome and chronic prostatitis on or after January 23, 2018, is denied.



____________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs