Citation Nr: 1829604 
Decision Date: 06/27/18 Archive Date: 07/02/18

DOCKET NO. 14-42 346 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an increased rating for residuals of prostate cancer in excess of 20 percent.

2. Entitlement to service connection for hepatitis C. 

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Dellarco, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from November 1969 to November 1971.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an October 2012 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. Of note, in this rating decision, the RO granted service connection for residuals of prostate cancer and awarded a total 100 percent disability rating from December 19, 2011 to December 31, 2011. Accordingly, the Veteran's claim for an increased rating has been re-characterized as reflected on the title page.

Based on statements contained within the Veteran's November 2014 Form 9, along with other submissions, the Board finds that the record has raised a claim for TDIU as an included claim within the Veteran's currently pending increased rating claim. See Rice v. Shinseki, 22 Vet. App. 447 (2009); see also VA 21-4138 Statement In Support of Claim (Aug. 2012); Veteran's Correspondence (Aug. 2013). This issue has therefore been added as an additional subject for current appellate consideration.

The issues of entitlement to service connection for hepatitis C and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. From January 1, 2012, to August 25, 2013, the Veteran's prostate cancer residuals were not manifested by daytime voiding intervals of less than one hour, or awakening to void five or more times per night. 

2. From August 26, 2013, resolving reasonable doubt in the Veteran's favor, the Veteran's prostate cancer residuals were manifested by daytime voiding interval of less than one hour and awakening to void five or more times per night.


CONCLUSIONS OF LAW

1. From January 1, 2012, to August 25, 2013, the criteria for a rating excess of 20 percent for residuals of prostate cancer are not met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.7, 4.115a, 4.115b, Diagnostic Code 7528 (2017).

2. From August 26, 2013, the criteria for a maximum rating of 40 percent for residuals of prostate cancer are met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.7, 4.115a, 4.115b, Diagnostic Code 7528 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran contends that he is entitled to a higher rating for residuals of his prostate cancer, which he identifies as urinary frequency. 

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned specific diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Because the level of disability may have varied over the course of the claim, the rating may be "staged" higher or lower for segments of time during the period under review in accordance with such variations, to the extent the evidence shows distinct time periods where the service-connected disability has exhibited signs or symptoms that would warrant different ratings under the rating criteria. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). In initial-rating cases, where the appeal stems from a granted claim of service connection with respect to the initial rating assigned, VA assesses the level of disability from the effective date of service connection. See Fenderson, 12 Vet. App. at 126. In increased rating claims, where a claimant seeks a higher rating for a previously service-connected disability, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In such claims, VA considers the level of disability for the period beginning one year prior to the claim for a higher rating. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2); Hart, 21 Vet. App. at 509. 

The Veteran's residuals of prostate cancer are rated under Diagnostic Code 7528 (malignant neoplasms of the genitourinary system). Diagnostic Code 7528 provides, in pertinent part, that if there has been no local reoccurrence or metastasis, then the disability will be rated on residuals of voiding dysfunction or renal dysfunction, whichever is predominant. 38 C.F.R. § 4.115b, Diagnostic Code 7528.

VA regulations provide that voiding dysfunction be rated as urine leakage, frequency, or obstructed voiding. See 38 C.F.R. § 4.115a. The regulation explicitly states that only the predominate area of dysfunction shall be considered for rating purposes. Id. 

Continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence which requires the wearing of absorbent materials which must be changed less than 2 times per day is to be rated as 20 percent disabling. A 40 percent rating is warranted when such impairment requires the wearing of absorbent materials which must be changed 2 to 4 times per day. A 60 percent rating requires the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day. Id.

Urinary frequency with a daytime voiding interval between two and three hours, or awakening to void two times per night, warrants a 10 percent rating. A 20 percent rating is warranted when there is a daytime voiding interval between one and two hours, or awakening to void three to four times per night. A maximum 40 percent rating is warranted when there is a daytime voiding interval less than one hour, or awakening to void five or more times per night. Id.

Obstructed voiding manifested by obstructive symptomatology with or without stricture disease requiring dilatation 1 to 2 times per year warrants the assignment of a noncompensable rating. A 10 percent rating is warranted when there is marked obstructive symptomatology (hesitancy, slow or weak stream, decreased force of stream) with any one or combination of the following: post void residuals greater than 150 cc; uroflowmetry; markedly diminished peak flow rate (less than 10 cc/sec); recurrent urinary tract infections secondary to obstruction; and/or stricture disease requiring periodic dilatation every 2 to 3 months. A maximum 30 percent rating is warranted for obstructed voiding manifested by urinary retention requiring intermittent or continuous catheterization. Id.

January 1, 2012 to August 25, 2013

In September 2012, the Veteran received a VA prostate examination. The examiner found that the Veteran's prostate cancer was in remission and his cancer treatments were completed in June 2011. Voiding dysfunction due to prostate cancer was noted. Urine leakage was noted, but did not require wearing absorbent material. No use of an appliance for voiding dysfunction was noted. Increased urinary frequency was noted, resulting in daytime voiding between 1 and 2 hours, and nighttime awakening to void 3 to 4 times per night. Signs or symptoms of obstructed voiding were noted, which were marked hesitancy, markedly slow or weak stream, and markedly decreased force of stream. There was no evidence of stricture disease requiring dilatation, recurrent urinary tract infections secondary to obstruction, uroflowmetry peak flow rate less than 10 cc/sec, post void residuals greater than 150 cc, or urinary retention requiring catheterization. 

In an October 2012 VA Application for Vocational Rehabilitation (VA Form 28-1900), the Veteran reported having to "urinate quite frequently" without further clarification of the resulting frequency. 

As the Veteran's prostate cancer was in remission and he was no longer receiving cancer treatment during this time period, it is appropriate to rate his disability based on the residual symptomatology. See 38 C.F.R. § 4.115b, Diagnostic Code 7528. 

During this period, the disability picture presented by the Veteran's prostate cancer residuals do not warrant a rating in excess of 20 percent. The evidence of record does not show a need for absorbent material due to voiding dysfunction, nor does it show urinary frequency resulting in daytime voiding intervals of less than one hour or nighttime voiding of five times or more per night. Moreover, there was no evidence of stricture disease requiring dilatation, recurrent urinary tract infections secondary to obstruction, uroflowmetry peak flow rate less than 10 cc/sec, post void residuals greater than 150 cc, or urinary retention requiring catheterization. Therefore, during this time period, the competent probative evidence weighs against finding entitlement to a rating in excess of 20 percent. Accordingly, a rating in excess of 20 percent for prostate cancer residuals from January 1, 2012 to August 25, 2013 is denied. 

August 26, 2013 Forward

In an undated correspondence by the Veteran, received on August 26, 2013, the Veteran detailed the impact of his residual voiding dysfunction on his daily life. He reported specific issues with urgency and incontinence. He stated that he experienced "daytime voiding intervals less than one hour and/or awakening to void five or more times per night." The Veteran further stated that "[w]hen within a public setting I generally require the wearing of absorbent materials which must be changed at least 2 times per day."

In his November 2014 Form 9, the Veteran again reported experiencing daytime voiding intervals of less than one hour and awaking to urinate five or more times per night. He further expressed needing to sit near a bathroom. 

As no objective medical evidence was submitted for this period, the Board notes that the Veteran is competent to report symptoms such as urinary frequency and incontinence, because such requires only personal knowledge as it comes through the senses. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

During this period, the disability picture presented by the Veteran's prostate cancer residuals warrants the maximum rating of 40 percent from August 26, 2013 forward. The Board notes that while the Veteran now claims utilizing absorbent materials, in conjunction to his urinary frequency, 38 C.F.R. § 4.115a explicitly instructs the decision maker to rate based on the predominate area of dysfunction. The Board finds that urinary frequency is the Veteran's predominate complaint, and rating the Veteran on his urinary frequency symptoms provides him with a higher rating based on the aforementioned evidence. Based on the Veteran's competent lay statements, the Board finds symptom manifestations of daytime voiding in intervals of less than one hour and awakening to void five or more times per night. Accordingly, by resolving reasonable doubt in the Veteran's favor, the Board awards the maximum rating of 40 percent from August 26, 2013 forward.

The Board has considered the benefit of the doubt rule in determining that the Veteran's disability warrants ratings no higher than what has been upheld and assigned herein. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

From January 1, 2012, to August 25, 2013, a rating excess of 20 percent rating for residuals of prostate cancer is denied.

From August 26, 2013, a maximum rating of 40 percent rating, but no higher, for residuals of prostate cancer is granted.

REMAND

Although the Board regrets the delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claim so that he is afforded every possible consideration. 

Hepatitis C

At the inception of his claim, the Veteran contended that his hepatitis C was the result of blood exposure during his service in the Republic of Vietnam in March 1971.

In September 2012, the Veteran was provided a VA examination, at which time the VA examiner provided an opinion against the Veteran's contention that his disorder is related to the March 1971 incident of in-service blood exposure. 

Since that time, the Veteran has identified other possible in-service exposures to hepatitis C beyond the March 1971 event, to include contaminated water, a gamma globulin injection, air gun inoculations, blood contact with shared items, and Agent Orange exposure. Additionally, in furtherance of his claim, the Veteran submitted a letter from his private physician, which stated that the Veteran's hepatitis C was likely the result of exposure to blood while in Vietnam. However, the private examiner did not identify any rationale in support of this opinion, nor does it reflect consideration of the other medical evidence of record. 

Based on the foregoing, the Board finds that a new medical opinion is warranted to speak to the Veteran's subsequent contentions regarding other possible in-service exposure to hepatitis C, address the Veteran's additional lay and medical evidence, and reconcile the conflicting medical opinions of record. 

TDIU

As noted in the Introduction, the Veteran's has submitted various statements regarding the preclusive effects of his urinary frequency on his ability to obtain and maintain employment. This has raised the issue of entitlement to a TDIU. In Rice v. Shinseki, the Court determined that a request for TDIU, whether expressly raised by a Veteran or reasonably raised by the evidence of record, is not a separate "claim" for benefits, but rather, is considered part and parcel of a claim for benefits for the underlying disability. As the RO has not developed or adjudicated the matter of whether the Veteran is entitled to TDIU, a remand is required.

Moreover, as the case is being remanded, the Veteran should be given another opportunity to identify any records of private medical treatment that he would like to submit or have VA obtain, since it appears that he obtains private treatment for his service-connected disabilities. 

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran a TDIU application form for completion (VA Form 21-8940), and notify him about (1) the information and evidence not of record that is necessary to substantiate his claim for a TDIU, (2) the information or evidence that he is expected to provide, and (3) the information and evidence that VA will seek to obtain on his behalf. A copy of this notification must be associated with the claims folder. 

2. Provide the Veteran an opportunity to identify any relevant outstanding private treatment records and any other relevant evidence pertaining to his claims. Authorized release forms (VA Form 21-4142) should be provided for this purpose. If attempts to obtain any records identified by the Veteran are not successful, he must be notified of this fact and all efforts to obtain them must be documented and associated with the claims file.

3. Next, schedule the Veteran for a VA examination by an appropriately qualified medical professional to determine the nature and etiology of his hepatitis C. The claims file and a copy of this REMAND should be made available to the examiner in conjunction with the examination and s/he should review it in its entirety. All necessary tests and studies should be accomplished. 

The examiner should provide an opinion regarding whether it is at least as likely as not (e.g., a 50 percent or greater probability) that the Veteran's hepatitis C had its onset in or is etiologically-related to the Veteran's active service. 

In providing the requested opinion, the examiner must consider and discuss the Veteran's contentions regarding in-service exposure to blood, contaminated water, a gamma globulin injection, air gun inoculations, and Agent Orange. The examiner should further discuss, any other known hepatitis C risk factors pertinent to the Veteran's case, all post-service clinical findings, and the other etiological opinions of record. 

The examiner must provide a complete rationale on which his/her opinion is based, and must include a discussion of the medical principles as applied to the medical evidence and facts used in establishing his/her opinion. 

4. The RO should determine whether a VA examination is necessary concerning the claim for a TDIU, and if so, schedule the Veteran for an appropriate VA examination to evaluate the issue of entitlement to TDIU.

5. After completing the above actions and any other development that may be warranted, adjudicate the issue of entitlement to TDIU. If necessary refer to the issue of TDIU to the Director of the Compensation Service (Director) for further consideration of entitlement to TDIU on an extraschedular basis. The AOJ should send the Director the entire claims file and a copy of this REMAND. If the Director finds that the Veteran is not entitled to TDIU on an extraschedular basis, a memorandum should be issued explaining the reason(s) for that decision and a summary of the evidence considered. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
DELYVONNE M. WHITEHEAD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs