﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190116-11222
DATE: July 30, 2019

ORDER

Entitlement to an initial 70 percent evaluation, but no higher, for posttraumatic stress disorder (PTSD) throughout the appeal period is granted.

Entitlement to a total disability based on individual unemployability based on service-connected disabilities (TDIU), from April 3, 2008, is granted.

FINDINGS OF FACT

1. Throughout the appeal period, the Veteran’s PTSD resulted in occupational and social impairment with deficiencies in most areas as a result of psychiatric symptomatology to include near-continuous panic and depression affecting the ability to function, difficulty in adapting to stressful circumstances, and inability to establish and maintain effective relationships. 

2. Throughout the appeal period, the frequency, duration, and severity of the Veteran’s PTSD symptomatology have not produced more severe manifestations that more nearly approximate total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; gross inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. 

3. The evidence of record demonstrates that, from April 3, 2008, the Veteran’s service-connected disabilities rendered him unable to secure or follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial 70 percent evaluation, but no higher, for the period beginning March 31, 2014, but no earlier, are met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.125, 4.126, 4.130, Diagnostic Code (DC) 9411. 

2. The criteria for entitlement to a TDIU, from April 3, 2008, are met. 38 C.F.R. §§ 3.340, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in January 2019. In July 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2 (d)).

The Veteran served on active duty for training with the United States Coast Guard (USCG) from August 1960 to February 1961. The Veteran also has service as a USCG Reservist. This matter initially came before the Board of Veterans’ Appeals (Board) on appeal from August 2009 and July 2013 rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO). The Board last remanded those issues in May 2017. 

During the pendency of that remand, the Veteran selected the Higher-Level Review lane when he opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form in July 2018. Accordingly, the January 2019 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board in a January 2019 RAMP election form. 

The Board also notes that the Veteran’s claim for an initial increased rating for PTSD has been pending since April 3, 2008 when the Veteran submitted his original claim for service connection for PTSD. See 38 C.F.R. § 3.156(b). Therefore, the appeal period for both the PTSD increased rating claim and TDIU claim is from April 3, 2008 to July 31, 2018 when the Veteran elected to participate in RAMP/AMA appeals modernization system. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 

As this is an evidence submission lane appeal at the Board, the Board has considered the evidence of record from April 3, 2008 through July 31, 2018, that was considered by the Agency of Original Jurisdiction (AOJ) as well as the evidence received from January 16, 2019 through April 16, 2019.

As a final initial matter, the Board notes that the Veteran’s claim for an increased rating for PTSD was remanded for a new examination by the Board in a May 2017 decision. The RO obtained a new examination in June 2017. Therefore, the Board finds that the RO has substantially complied with the May 2017 Board remand directive. See Stegall v. West, 11 Vet. App. 268 (1998). 

Entitlement to an initial increased rating for PTSD since April 3, 2008

The Board reflects that the Veteran initially filed his claim of service connection for PTSD on April 3, 2008; service connection was awarded beginning that date in an August 2008 rating decision from the AOJ. Currently, the Veteran has been assigned a 30 percent evaluation for his PTSD from April 3, 2008 through June 7, 2017, and assigned a 70 percent evaluation for the period beginning June 8, 2017. Those evaluations have been assigned under DC 9411.

The Veteran contends that he is entitled to a 70 percent rating for his PTSD prior to June 8, 2017. 

Disability ratings are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities. 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In rating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Separate ratings can be assigned for separate periods of time, based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). A claim for increased rating remains in controversy when less than the maximum available benefit is awarded Ab v. Brown, 6 Vet. App. 35 (1993). Reasonable doubt as to the degree of disability will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

The Veteran’s PTSD is rated under DC 9411. Pursuant to DC 9411, a 30 percent rating is assigned when there is occupational and social impairment with occasional decreases in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships.

A 100 percent rating is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; gross inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.71a, DC 9411, General Rating Formula for Mental Disorders.

Symptoms listed in VA’s general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The VA is required to perform a “holistic analysis” in which it “assesses the severity, frequency, and duration of the signs and symptoms of the Veteran’s service-connected mental disorder; quantifies the level of occupational and social impairment caused by those signs and symptoms; and assigns an evaluation that most nearly approximates that level of occupational and social impairment.” Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017).

Evidence relevant to the severity of the Veteran’s PTSD includes an August 2008 VA examination. During the examination, the Veteran reported that since his in-service motor vehicle accident, he has been suffering from problems pertaining to anxiety, depression, nightmares, flashbacks, and sleep. As to his social functioning, he stated that he has been married four times, has four children, and worked as a fire investigator. He said that he has limited social activities and does not have good communication with other family members. During the mental status examination, the examiner noted that the Veteran was alert and oriented, answered questions appropriately, but was quite anxious in his presentation. He was obsessive in his manner when describing the issue of the car accident and his frustration over the years in obtaining services and medical help. The examiner observed that the Veteran’s judgment was intact, his knowledge was average, his insight was limited, and his memory was okay. He did not present with any suicidal or homicidal ideations. The examiner opined that the Veteran met the requirements under DSM-IV for PTSD. The frequency of his symptoms was often, the severity was moderate, and the duration lasted for minutes to hours. Finally, the examiner determined that time lost from work due to the Veteran’s PTSD was a few hours. 

The Veteran had another VA examination in June 2009 to measure the severity of his PTSD. The Veteran complained of difficulty staying asleep, nightmares, cold sweats, and recurrent recollections of the accident. He stated that he has episodes of anxiety and nervousness. He stated that he was still working as a fire investigator. During the mental status examination, the examiner observed that the Veteran was neatly dressed and oriented to person, place and time. He noted that the Veteran appeared tense. The Veteran denied suicidal or homicidal ideation, delusions, and hallucinations. His mood was one of depression and anxiety. His memory of recent and remote events was good. The examiner opined that there were no major changes in the frequency, severity, or duration of symptoms since his last exam. Time lost from work due to PTSD was noted as a few hours. 

The Veteran’s VA treatment records reveal that he has been engaged in regular treatment for his PTSD since October 2009. During a visit in October 2009, the Veteran presented as agitated and anxious. In November 2009, the Veteran discussed his recent divorce and continuing struggles with stress related to denials for service connection. In May 2010, the Veteran stated that he finds comfort in isolation. He reported considerable intimacy issues and having no interest in relationships. In July 2011, he discussed enjoying his work, but he was having difficulty with his family. During a visit in September 2011, he became quite upset and at times tearful due to a rating decision denying his increase for PTSD. In February 2012, the Veteran discussed his romantic relationships and his struggles with headaches, moodiness, and anxiety. In August 2012, the Veteran discussed his avoiding and shutting out of relationships. In July 2013, he discussed feelings of isolation, depression, and avoidance. In September 2013, the Veteran reported that it was becoming increasingly difficult to work due to pain, insomnia, and his PTSD. During an October 2013 visit, the Veteran became tearful when discussing anxiety about his appeals with the VA. In November 2013, the Veteran reported stress related to his VA case and work limitations due to headaches and PTSD. In February 2014, he reported ups and downs with his mood and coping with isolation and procrastination. He also reported that his family contact remained limited. 

In a March 2014 Medical Impairment Questionnaire completed by the Veteran’s treating psychologist, Dr. S.P., it was noted that the Veteran’s PTSD presented with the following symptoms: appetite disturbance with weight change; decreased energy; feelings of guilt and worthlessness; generalized persistent anxiety; mood disturbance; recurrent and intrusive recollections; persistent disturbances of mood or affect; change in personality; apprehensive expectation; seclusiveness or autistic thinking; emotional withdrawal or isolation; persistent irrational fear; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances; motor tension; emotional lability; loosening of associations; vigilance and scanning; easy distractibility; memory impairment; sleep disturbance; and a history of multiple physical symptoms. She also noted that the Veteran tends to procrastinate and isolate due to stress and needs frequent rest breaks to get through work assignments. Dr. S.P. opined that the Veteran’s PTSD seriously limits his abilities in social interactions and he copes by isolating himself from others. 

In August 2014, the Veteran was afforded yet another VA examination. The examiner opined that the Veteran’s PTSD symptoms result in occupational and social impairment due to mild or transient symptoms which decreases work efficiency and ability to perform occupational tasks only during periods of significant stress. The Veteran reported that his relationship with his siblings is distant and argumentative. He has been married and divorced four times, in each instance, he was the person who filed for divorce. He has no relationship with his children and he blames his ex-wife. The Veteran lives by himself, which he prefers. Additionally, the Veteran was working part-time until about three months prior to the exam. The examiner noted symptoms of depressed mood, anxiety, irritable behavior and a persistent negative state. During the mental status examination, the Veteran was observed to be casually attired and neatly groomed. He was polite and attentive and expressed himself with clarity and in detail. He seemed tense and nervous and his mood was depressed and tearful. He acknowledged suicidal ideation and intent in the past, but he disclaimed any thought of self-harm in the present. The examiner also administered the Beck Depression Inventory-II and the Beck Anxiety Inventory. The Veteran scored a 35 on the depression inventory and a 36 on the anxiety inventory, both of which were in the severe range. 

Another VA examination was conducted in June 2017. Symptoms reported by the Veteran included: distressing memories; distressing dreams; physiological reactions to internal or external cues; avoidance of or efforts to avoid external reminders that arouse memories, thoughts, or feelings associated with events; diminished interest or participation in significant activities; feelings of detachment or estrangement from others; irritable behavior, hypervigilance; concentration difficulty; and sleep disturbance. Features of his condition have included social withdrawal, anxiety, suspiciousness, and depressive symptoms. The examiner noted that in terms of functioning impact, the Veteran acknowledged: preferring to be left alone at times; discomfort in crowds; easily agitated at times; depressed a good portion of the time; difficulty managing frustration in public and at home; periods in not having the motivation to perform activities; and some suspiciousness of others. The examiner opined that in terms of his functioning level, the Veteran seems to be exhibiting mild limitation in the areas of remember and applying information. He also appears to be exhibiting moderate limitations in relating to and working with supervisors, co-workers, and others. Furthermore, he appears to be exhibiting mild limitation in the ability to concentrate, persist, or maintain pace. Finally, he appears to be exhibiting some noticeable limitations in trying to adapt and manage oneself. The examiner determined that the Veteran’s PTSD symptoms have resulted in occupational and social impairment with reduced reliability and productivity. Other symptoms noted by the examiner were: depressed mood; anxiety; suspiciousness; panic attacks that occur weekly or less often; near continuous panic or depression affecting ability to function independently; appropriately and effectively; chronic sleep impairment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social impairments; and difficulty in adapting to stressful circumstances, including work or a work-like setting. During the mental status examination, the Veteran was observed to be fully alert and oriented in all spheres. He was dressed in casually appropriate attire and his grooming and eye contact were good. His speech and motor behavior were insignificant. His mood was irritable, agitated, and depressed and his affect was appropriate. There were no indications of hallucinations, delusions, suicidal ideation, or homicidal ideation. The Veteran described a noticeable reduction in attending to tasks for extended periods of time. However, his memory, insight, and judgment were within normal limits. 

The Veteran’s VA treatment records include continued treatment for his PTSD symptoms. In April 2014, the Veteran reported that the nature of his work was becoming too overwhelming. In August 2014, the Veteran presented as anxious and distressed about his upcoming VA exam. He said that he had not been able to sleep and was distressed about reliving the trauma. He stated that he was anxious and felt tightness in his chest. The Veteran reported struggles with working including avoidance and procrastination. During a May 2015 visit, the Veteran scored 21 on the depression screen, which is suggestive of severe depression. He reported feelings of sadness due to strained relationships with his brother and sister. In April 2016, the Veteran reported chronic daily headaches and insomnia limiting his ability to function as a fire investigator. During a March 2017 visit, the Veteran reported difficulty continuing with any type of work at this time. He stated that his PTSD continues to influence various aspects of his life including interpersonal functioning and periodic episodes of isolation and outbursts with family which creates ongoing tension. In May 2017, the Veteran stated that his PTSD impacts his marriage with periods of withdrawal, but also emotional outbursts. The Veteran’s spouse reported that the Veteran can become highly upset and angry with verbal outbursts. He also stated that he has periods of depression and desire for isolation from his family. 

Based on the foregoing evidence, the Board finds that the evidence of record demonstrates that the Veteran has had occupational and social impairment with deficiencies in most areas throughout the appeal period. Such is commensurate with a 70 percent evaluation throughout the appeal period. 

The Board, however, finds that an evaluation in excess of 70 percent is not warranted in this case as the evidence does not demonstrate total occupational and social impairment. As to his social functioning, although the Veteran was noted to have isolative behaviors and to be distance, he was also noted to be married and to have some formal social relationships with his children and siblings. As to his occupational functioning, the Veteran reported difficulty maintaining his employment as a fire investigator, although he is shown to have at least part-time employment throughout the appeal period.

Moreover, the evidence of record does not show that the Veteran has ever been hospitalized or institutionalized due symptoms related to his PTSD. Additionally, there is no evidence that the Veteran is a danger to himself or others. The Veteran’s mental status examinations during his appointments and VA examinations have been absent of gross impairment of thought processes or communication, persistent delusions or hallucinations, disorientation, and significant memory loss. The Veteran has also been described as appropriately dressed and engaged during the examinations. As there is no medical or lay evidence to show that the Veteran’s symptoms inhibit his ability to independently function, a total rating is not warranted.

Accordingly, an initial 70 percent evaluation, but no higher, is warranted throughout the appeal period. See 38 C.F.R. §§ 4.7, 4.130, DC 9411. 

Entitlement to TDIU since April 3, 2008

The Veteran contends that he is unable to work due to his service-connected disabilities. 

A claim for a TDIU is part of an increased rating claim when such a claim is raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Here, there is evidence suggesting that the Veteran’s PTSD and other service-connected disabilities interfere with his ability to maintain employment. As the record now raises a question of whether the Veteran is unemployable due to his service-connected disabilities, a claim for a TDIU is properly before the Board.

A total disability rating may be assigned when the schedular rating is less than 100 percent where a Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, that disability is rated 60 percent or more, or if there are two or more disabilities, there shall be at least one disability rated 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16. 

In determining whether a Veteran is unemployable for VA purposes, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but not to age or any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Hersey v. Derwinski, 2 Vet. App. 91 (1992); Faust v. West, 13 Vet. App. 342 (2000). A Veteran need not show 100 percent unemployability in order to be entitled to a TDIU. Robertson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). 

Additionally, in a recent precedential decision issued by the United States Court of Appeals for Veterans Claims (Court), they offered guidance in defining “unable to secure and follow a substantially gainful occupation.” In Ray v. Wilkie, 31 Vet. App. 58 (2019), the Court found that 38 C.F.R. § 4.16(b) has two components: one economic and one noneconomic. The economic component means an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person. The non-economic component includes consideration of the following: the Veteran’s history, education, skill, and training; whether the Veteran has the physical ability to perform the type of activities required by the occupation at issue; and whether the Veteran has the mental ability to perform the activities required by the occupation at issue.

Beginning on April 3, 2008, the Veteran established service connection for sleep apnea rated 50 percent disabling and PTSD, which is now rated as 70 percent disabling; his combined disability evaluation throughout the appeal period is 90 percent disabling. Therefore, the Veteran met the schedular rating criteria for TDIU as of April 3, 2008. 38 C.F.R. § 4.16(a). 

The remaining inquiry is whether he was unable to secure or follow substantially gainful occupation due solely to his service-connected sleep apnea and PTSD. 

The Veteran’s September 2014 application for increased compensation and unemployability shows that the Veteran last worked full-time in June 2007. He maintained part-time employment as a fire investigator until June 2014. Prior to being a fire investigator, the Veteran was a firefighter for 20 years. In a September 2014 statement in support of claim, the Veteran stated that he had not slept a complete night of sleep since his in-service accident in November 1960. He stated that he has nightmares due to his PTSD and stops breathing at night due to his sleep apnea. He further stated that when he awakens in the morning, he is exhausted, falls asleep during the day, and has difficulty concentrating when he is on an assignment. He also said that his mood swings and panic attacks prevent him from working with people at times and he sometimes gets in arguments with people.

In an October 2010 statement, the Veteran reported that his medical conditions limited his ability to function in the capacity of a private fire explosion investigator. He further stated that he has received less assignments over time due to his limited abilities. 

Medical evidence includes a September 2013 mental health visit where the Veteran stated that it was becoming increasingly difficult to maintain employment. In April 2014, he expressed that the nature of his work was becoming too overwhelming. A March 2014 questionnaire completed by Dr. S.P. found that the Veteran’s complex medical history leads to many physical limitations in his ability to perform his job duties on a regular and substantial basis. She further stated that his PTSD symptoms of avoidance, isolation, and procrastination are continued challenges to his ability to maintain employment. 

The Veteran was afforded a VA examination in June 2017 specifically for a TDIU. The examiner opined that although the Veteran is able to carry out occupational tasks, he may have periodic difficulty in cooperating with others; handling conflicts; stating own point of view; initiating or sustaining conversations; and understanding and responding to social cues. Additionally, he may exhibit some visible difficulty in responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; and maintaining personal hygiene and attire appropriate to work settings.

A January 2019 private vocational evaluation indicated that persistence, pace, and concentration are problems for the Veteran. The evaluator opined that it is as likely as not that the Veteran would be unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities and he has been in this position since June 2017. 

When reviewing the evidence in light of the Court’s decision in Ray, the Board finds that the Veteran’s service-connected sleep apnea and PTSD render him unemployable. The Veteran’s history, education, skill, and training are limited to firefighting and investigating fires and both his physical and mental limitations prevent him from securing and following substantially gainful employment. 31 Vet. App at 73. The evidence shows that the Veteran is physically unable to perform the only occupation he has been trained in due to exhaustion from his sleep apnea. The exhaustion hinders the Veteran’s ability to concentrate and focus to fulfill the duties of his job as an investigator. The Veteran is unable to perform his job due to his mental limitations because of his tendency to isolate himself and procrastinate. Additionally, the Veteran’s irritable behavior prevents him from engaging with others in order to fulfill his employment obligations. In support of the Veteran’s contentions that he is unable to maintain employment, is the March 2014 questionnaire completed by Dr. S.P. and the June 2017 VA exam. Both evaluators found that the Veteran’s PTSD symptoms present continuing challenges, which prevent him from managing work expectations. Accordingly, the Board finds that the Veteran is unable to secure and follow a substantially gainful occupation by reason of his service-connected disabilities, and TDIU is warranted in this case beginning on April 3, 2008, based on the evidence of record. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. 

In so reaching the above conclusions, the Board has appropriately applied the benefit of the doubt doctrine in this case. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

 

MARTIN B. PETERS

Acting Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Hartford, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.