Citation Nr: 21049972
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 13-11 657
DATE: August 13, 2021

ORDER

Entitlement to a 60 percent rating, but no higher, before April 16, 2021, for a cardiac disability is granted.

Entitlement to a 100 percent rating for a cardiac disability on and after April 16, 2021, is granted.

FINDINGS OF FACT

1. Before April 16, 2021, the Veteran's cardiac disability resulted in, at worst, dyspnea and fatigue with a workload between 3 Metabolic Equivalents (METs) and 5 METs.

2. On and after April 16, 2021, the Veteran's cardiac disability resulted in dyspnea and fatigue with a workload of 3 METs or fewer.

CONCLUSIONS OF LAW

1. Before April 16, 2021, the criteria for a 60 percent rating for a cardiac disability have been met. 38 U.S.C. § 1155 ; 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.104, Diagnostic Code 7005.

2. On and after April 16, 2021, the criteria for a 100 percent rating for a cardiac disability have been met. 38 U.S.C. § 1155 ; 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.104, Diagnostic Code 7005.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from November 1965 to November 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2011 rating decision of the Agency of Original Jurisdiction (AOJ) granting service connection for a cardiac disability with an initial 10 percent rating. 

This matter was previously before the Board in December 2019, when it remanded the Veteran's claim in order to afford the Veteran with an additional opinion addressing the current severity of the Veteran's cardiac disability. The Veteran underwent such an examination in April 2021. The Board finds that the AOJ has substantially complied with its December 2019 remand directive, and it will proceed to an opinion. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Stegall v. West, 11 Vet. App. 268, 271 (1998).

Increased Rating

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3. A claim will be denied only if the preponderance of the evidence is against the claim. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran's cardiac disability is rated 10 percent disabling under Diagnostic Code 7005, applicable to coronary artery disease (CAD). Under Diagnostic Code 7005, a 10 percent rating applies to a workload of greater than 7 METs but not greater than 10 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; continuous medication required. A 30 percent rating applies to a workload of greater than 5 METs but not greater than 7 METs resulting in dyspnea, fatigue, angina, dizziness or syncope, or; evidence of cardiac hypertrophy or dilatation on electrocardiogram (EKG), echocardiogram (ECG), or x-ray examination. 

A 60 percent applies to more than one episode of acute congestive heart failure in the past year, or; a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction (LVEF) of 30 to 50 percent. A 100 percent rating requires chronic congestive heart failure, or; a workload of 3 METs or fewer resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. See 38 C.F.R. § 4.104.

Turning to the facts in this case, the Veteran filed his underlying claim of entitlement to service connection in February 2010. The Veteran underwent an examination in June 2010, at which time an examiner diagnosed the Veteran with episodic coronary vasospasm with no significant CAD. The examiner noted that the Veteran took diltiazem in treatment of his cardiac symptoms. While the Veteran had a history of cardiac spasm, he had no other acute cardiac illness, including myocardial infarction, congestive heart failure, or cardiac surgeries. The Veteran experienced chest pain and shortness of breath once weekly with moderate exertion, with each episode lasting approximately 15 to 30 minutes. The Veteran's heart size was within normal limits. The examiner did not discuss the Veteran's METs or LVEF. In July 2012, a VA clinician noted that the Veteran had normal EKG functional capacity and estimated the Veteran's METs to be between 4 and 5.

The Veteran underwent an additional examination in December 2012, at which time the examiner noted that the Veteran took continuous medication for his cardiac disability. There was no history of percutaneous coronary intervention, myocardial infarction, coronary bypass surgery, heart transplant, implanted cardiac pacemaker, implanted automatic implantable cardioverter defibrillation, congestive heart failure, cardiac hypertrophy, or cardiac dilatation. Following an interview-based cardiac stress test, the examiner estimated the Veteran would experience dyspnea with a METs level between 3 and 5. 

The examiner opined that the Veteran's cardiac disability was more accurately measured by LVEF, rather than METs, because it was impossible to determine a METs level based solely on cardiac functional status with the Veteran's associated co-morbid conditions of his age, obesity, arthritis, tobacco use, and deconditioning. In such cases, the LVEF more accurately measured the heart's relative contribution to the body's capacity for oxygen uptake. A January 2013 ECG showed an LVEF of 55 to 60 percent. In December 2013, a clinician estimated the Veteran's METs to be between 4 and 5. 

The Veteran underwent an additional examination in April 2016, at which time the examiner noted that the Veteran took continuous medication for his cardiac disability. There was no history of myocardial infarction, congestive heart failure, cardiac arrhythmia, heart valve conditions, infectious heart conditions, pericardial adhesions, cardiac procedures, cardiac hypertrophy, or cardiac dilatation. Following an interview-based cardiac stress test, the examiner estimated the Veteran would experience dyspnea with a METs level between 3 and 5. The examiner indicated that the Veteran's METs limitation was not due solely to the Veteran's cardiac disability, but also to co-morbidities including tobacco use, diabetes, hyperlipidemia, arthritis, obesity, deconditioning, and age. The examiner stated that it was not possible to accurately measure the METs due solely to the Veteran's cardiac disability. 

Upon review of this evidence, in May 2017, the Board requested a medical opinion clarifying the nature and severity of the Veteran's cardiac diagnosis and identifying whether the severity of the Veteran's cardiac disability was best measured by METs or LVEF. In September 2019, a VA cardiologist diagnosed the Veteran with coronary artery vasospasm and noted that this condition typically resulted in symptoms such as chest pain, shortness of breath, dizziness, nausea, and cold sweats. The cardiologist found that neither METs nor LVEF were adequate to diagnose the Veteran with coronary vasospasm; coronary vasospasm could exist even with a normal LVEF, and exercise-based METs testing did not typically provoke an episode of vasospasm. The cardiologist agreed with the December 2012 examiner that METs did not accurately measure the Veteran's symptoms because the Veteran could have normal cardiac function yet low METs as the result of non-cardiac causes. 

In December 2019, the Board remanded the Veteran's claim in order to afford the Veteran with an additional examination. The examiner was to explain how the severity of the Veteran's heart disability was best evaluated, if not by the use of METs and LVEF. The examiner was to address whether the Veteran's complaints of dizziness, lightheadedness, weakness, chest pain, nausea, headaches, exhaustion, and temporary paralysis were attributed to an undiagnosed cerebral vasospasm, and if so, whether such condition was related to the Veteran's service connected coronary artery vasospasm. The examiner was to differentiate between the symptoms attributable to cerebral vasospasm and those attributable to coronary artery vasospasm.

The Veteran underwent an additional examination in January 2020, at which time the Veteran complained of experiencing chest pain approximately twice a month. The examiner stated that exercise stress testing was not performed because such testing was not part of the Veteran's current treatment plan, and stress testing was not without significant risk. Instead, following an interview-based cardiac stress test, the examiner estimated that the Veteran experienced dyspnea with a workload greater than between 5 and 7 METs. The examiner opined that the Veteran's METs level was due solely to the Veteran's cardiac disability, but stated without further explanation that LVEF more accurately reflected the Veteran's cardiac disability. The Board places relatively little weight on this opinion because the examiner did not explain why LVEF most accurately measured the Veteran's cardiac disability, nor did the examiner order additional LVEF testing to measure the severity of the Veteran's symptoms. 

The Veteran underwent an additional examination on April 16, 2021, with an addendum opinion provided in June 2021, at which time the Veteran complained of increased episodes of vasospasms, with each episode lasting 15-20 minutes, in warm weather and with strenuous activity. During these episodes, the Veteran experienced chest pain, lightheadedness, dizziness, and fatigue. The examiner noted that the Veteran took continuous medication for his cardiac disability. There was no history of myocardial infarction, congestive heart failure, cardiac arrhythmia, heart valve conditions, infectious heart conditions, pericardial adhesions, or cardiac procedures. A May 2021 EKG showed evidence of cardiac hypertrophy but no cardiac dilatation. An April 2021 chest x-ray was normal, and an April 2021 ECG showed an LVEF of 61 percent. The examiner noted that the Veteran's normal LVEF did not rule out vasospastic angina, nor did it indicate the severity of the Veteran's disability.

The examiner stated that exercise stress testing was not performed because such testing was not part of the Veteran's current treatment plan, and stress testing was not without significant risk. The examiner further noted that the Veteran's symptoms were intermittent, given the pathophysiology of spasms of the coronary arteries. As a result of the Veteran's intermittent symptoms, the examiner conducted an interview-based stress test in which the Veteran stated that he experienced dyspnea and fatigue with a workload greater than between 3 and 5 METs. During the Veteran's spasms of the coronary arteries, the examiner stated that the Veteran experienced dyspnea and fatigue with a workload between 1 and 3 METs. After approximately 15 to 20 minutes, the Veteran would return to a higher baseline METs score between 3 and 5, with residual fatigue from the coronary vasospasm affecting his baseline METs score. 

The examiner found that the Veteran did not have cerebral artery vasospasms. Instead, the Veteran's symptoms of dizziness, lightheadedness, fatigue, weakness, and chest pain were caused by his coronary vasospasms, which resolved when such spasms dissipated. The examiner found that the Veteran's nausea was caused by his intermittent benign paroxysmal positional vertigo, and his neurological symptoms were caused by his diabetes. The Veteran's headaches had resolved.

There is no evidence that the above examiners were either not competent or credible. Further, each examiner's assessment was based on both the Veteran's reports of his symptoms and each examiner's own objective examination and review of the medical evidence of record. As such, the Board finds that each respective examination report is entitled to significant probative weight as to the severity of the Veteran's disability during the period on appeal. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

Turning to an analysis of these facts, as an initial matter, when the symptoms of a service-connected disability cannot be separated from those from a non-service-connected disability, all such symptoms must be attributed to the service-connected disability. See 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). In this case, some clinicians, for example in December 2012, April 2016, and May 2017, found that the Veteran's impaired METs readings were the combined result of both the Veteran's service connected cardiac disability and his non-service connected co-morbidities. In April 2021, however, an examiner explained that the Veteran's METs readings were attributable to his cardiac disability alone. Thus, without medical evidence clearly specifying which symptoms are attributable to the Veteran's service connected cardiac disability, the Board will attribute all symptoms to the Veteran's service-connected cardiac disability. 

With the Veteran's impaired METs attributable to his service-connected cardiac disability, the Board finds that a 100 percent rating is warranted for the Veteran's cardiac disability as of the Veteran's April 16, 2021 examination. A 100 percent rating is warranted with a workload of 3 METs or fewer resulting in symptoms such as dyspnea or fatigue. During the Veteran's April 2021 examination, an interview-based METs assessment showed that during episodes of cardiac spasm, the Veteran experienced a workload of 1 to 3 METs resulting in dyspnea and fatigue. As such, the Board finds that a 100 percent rating is warranted for the Veteran's cardiac disability as of the Veteran's April 16, 2021 examination.

The Board finds that a 60 percent rating is warranted before the Veteran's April 16, 2021 examination. A 60 percent rating is warranted with a workload of greater than 3 METs but not greater than 5 METs resulting in symptoms such as dyspnea or fatigue. Before April 16, 2021, the medical evidence, including from July 2012, December 2012, December 2013, and April 2016, generally shows that the Veteran, at worst, experienced a workload of 3 to 5 METs resulting in dyspnea and fatigue. As such, the Board finds that a maximum 60 percent rating is warranted for the Veteran's cardiac disability before April 16, 2021. None of the evidence prior to April 16, 2021 reflects that the Veteran's workload was limited to less than 3 METS. While the Board acknowledges that it is unlikely that the Veteran's heart worsened on the date of the examination, the April 2021 VA examination is the first certain date upon which the Veteran's heart disability was clearly worse. As such, entitlement to a 60 percent rating prior to April 16, 2021 is not warranted in this case. 38 C.F.R. §§ 4.3, 4.7, 4.104.

In addition to its review of the medical record, the Board has considered the Veteran's personal assertions in support of his claim. The Veteran is competent, as a layperson, to report on his personal knowledge of his symptoms, such as experiencing chest pain, fatigue, and shortness of breath. With that said, despite the Veteran's competence to report on such symptoms, the Veteran, as a layperson, is not competent to provide a probative, persuasive opinion on a medical matter, especially on a matter as complex as whether his cardiac symptoms satisfy the applicable rating criteria. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

Furthermore, the Board finds that additional higher or alternative ratings under different Diagnostic Codes applicable to diseases of the heart are unwarranted in this case because the Veteran's service-connected disability has been characterized as CAD, and the rating criteria associated with CAD appropriately contemplates the Veteran's symptoms. See 38 C.F.R. § 4.104, Diagnostic Codes 7000-7123.

 

 

CHRISTOPHER A. WENDELL

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board J.A. Flynn, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.